JOHN F. AND DONNA H. SCHULTHEISS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN F. SCHULTHEISS, M.D., P.A., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schultheiss v. Commissioner
Docket Nos. 11435-89, 11436-89
United States Tax Court
T.C. Memo 1992-238; 1992 Tax Ct. Memo LEXIS 257; 63 T.C.M. (CCH) 2836; April 22, 1992, Filed *257 Decisions will be entered under Rule 155. John O. Scott and Danny J. Gumm, for petitioners. Phillip A. Pillar, for respondent. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in the Federal income tax and additions to tax of petitioners John F. and Donna H. Schultheiss for the calendar years 1984 and 1985 and in the corporate income tax of John F. Schultheiss, M.D., P.A., for its fiscal years ending March 31, 1985, and March 31, 1986, in the following amounts: John F. and Donna H. Schultheiss - Docket No. 11435-89
Additions to Tax
Year Ending
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
Dec. 31, 1984
$ 94,737
$ 4,736.85
[1]
$ 23,684.25
Dec. 31, 1985
1,663
--
--
--
John F. Schultheiss, M.D., P.A. - Docket No. 11436-89
Year Ending
Deficiency
Mar. 31, 1985
$   870
Mar. 31, 1986 5,182
All section references *258 are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless indicated otherwise. By amendment to answer, respondent claimed an increased deficiency from John F. Schultheiss, M.D., P.A., for its fiscal year ending March 31, 1985, in the amount of $ 33,712.40. Some of the issues raised by the pleadings have been disposed of by agreement of the parties leaving for decision: (1) Whether $ 85,000 of accounts receivable at the time of incorporation of Dr. Schultheiss' medical practice in 1984 was transferred to the corporation or is properly includable in Dr. Schultheiss' income; (2) if the accounts receivable were transferred to the corporation, whether they are properly includable in the corporate gross income for the corporate fiscal year ending March 31, 1985, and, if so, whether they were so included; and (3) whether Dr. and Mrs. Schultheiss are liable for additions to tax for negligence or intentional disregard of rules or regulations and for substantial understatement of income tax for the year 1984. FINDINGS OF FACT
Some of the facts have been stipulated and are found accordingly. Petitioners *259 John F. and Donna H. Schultheiss (the Schultheisses) resided in Victoria, Texas, at the time of the filing of their petition in this case. Petitioner John F. Schultheiss, M.D., P.A. (association), is a professional association formed under the laws of the State of Texas. It maintained its principal place of business in Victoria, Texas, at the time its petition in this case was filed. The Schultheisses timely filed their Federal income tax returns for the calendar years 1984 and 1985. The association timely filed its corporate income tax returns for its fiscal years ending March 31, 1985, and March 31, 1986. Dr. Schultheiss received his bachelor of arts degree in biological sciences from Rutgers University and his medical degree from the University of Wisconsin. He served in the United States Army for 12 years. When Dr. Schultheiss left the Army around 1982 or 1983, he established a medical practice as a sole proprietorship in Victoria, Texas, as a gastroenterologist/internist. He continued to practice medicine from the time of establishment of his practice throughout the years here in issue. When he established his medical practice, Dr. Schultheiss engaged Mr. James E. Hamilton *260 of Roloff Hnatek, an accounting firm, to set up the business aspects of his medical practice. At Mr. Hamilton's suggestion, Dr. Schultheiss hired Ms. Deborah Greene as office manager. Ms. Greene was given the major responsibility for hiring other employees and was in charge of the accounts receivable, accounts payable, personnel records, and general office matters connected with Dr. Schultheiss' medical practice. Mr. Hamilton prepared profit and loss, financial, and income statements for Dr. Schultheiss' medical practice and prepared Dr. and Mrs. Schultheiss' individual income tax returns. Mr. Hamilton left Roloff Hnatek in July 1984 and joined another accounting firm but continued to do accounting work for Dr. Schultheiss. The sole proprietorship kept its books and records on the cash basis of accounting. The accounts receivable were recorded using a manual system known as the "peg board" system. This system included the use of day sheets, ledger cards, superbills, and receipts. At least on a monthly basis Dr. Schultheiss would review the ledger cards and would determine whether to refer past due accounts receivable for collection. The past due accounts referred for collection *261 were maintained in a separate account. The balance of accounts receivable of Dr. Schultheiss' medical practice on March 31, 1984, was $ 175,700.98. While Dr. Schultheiss' medical practice was operated as a sole proprietorship, the gross cash receipts from the practice were deposited into an account styled "John Schultheiss, M.D." at First Victoria National Bank, Victoria, Texas. Dr. Schultheiss regularly made deposits into the account. The Schultheisses reported on Schedule C of their 1984 Federal income tax return gross receipts from the medical practice prior to its incorporation of $ 61,822. Monthly income statements prepared by Mr. Hamilton for the same time period showed gross receipts of $ 161,413.45. Bank deposits into Dr. Schultheiss' medical practice account for the same time period were in the following amounts: Month ending
Amount deposited
Jan. 31, 1984
$  39,908.75
Feb. 29, 1984
50,834.48
Mar. 30, 1984
69,642.56
Apr. 30, 1984
[1] 4,572.77
Total
$ 164,958.56
*262 Dr. and Mrs. Schultheiss failed to report $ 102,000 of gross income from Dr. Schultheiss' medical practice on Schedule C of their income tax return for 1984, which $ 102,000 represented cash received in 1984 prior to April 1 from Dr. Schultheiss' medical practice. The association was formed on April 1, 1984. All shares of outstanding stock of the corporation were issued to Dr. Schultheiss. On April 1, 1984, Dr. and Mrs. Schultheiss executed a document entitled "Bill of Sale and Agreement", which stated that "In consideration of the issuance to it of One Thousand (1,000) shares of the Association, the Transferor hereby sells, assigns, transfers and conveys to the Association all the right, title and interest in and to the following property". The property transferred was listed as the tangible assets listed on Exhibit A attached and all stock in trade and intangible assets of Dr. Schultheiss' medical practice. Exhibit A attached to the document stated: FIXED ASSETS
TAX BASIS
FAIR MARKET VALUE
Equipment & Furniture
$ 46,416.34
$  46,416.34    Less Accumulated
Depreciation (Net)
Accounts Receivable
-0-  90,700.98     Investment VRMC
12,000.00     $ 149,350.92[sic]
*263 The document also provided that in consideration of the transfer of the property, the association agrees to assume and discharge all debts, duties and obligations of the business that appear on Exhibit B attached to the document and that the association agrees to indemnify the transferor from any of the debts of the business. The document also provided that the transferor appoints the association as its attorney-in-fact to collect for its own use and benefit all debts and obligations owing to the business. Exhibit B attached to the document stated: LIABILITIES
TAX BASIS
FAIR MARKET VALUE
Note to
JOHN F. SCHULTHEISS, M.D.
$ -0-
$ 100,000.00
A document styled "Promissory Note" dated April 1, 1984, whereby the association promised to pay Dr. Schultheiss $ 100,000, plus interest, was executed by the association by Dr. Schultheiss as its president. Prior to April 30, 1984, the association kept its accounts receivable manually in the same manner which had been used by the sole proprietorship. Thereafter, the association kept its accounts receivable ledger on a computer. The association used a general ledger update report to account for items of income and expense for *264 financial accounting purposes. According to the association's ledger, the opening balance of accounts receivable on April 1, 1984, was $ 90,700.98. Except for delinquent accounts referred for collection, all accounts receivable held by Dr. Schultheiss prior to the incorporation of his medical practice were collected by the association. In the general ledger update report for the corporate fiscal year beginning April 1, 1984, the following entries were made for July 31, 1984: Src Reference/Description
Debits
Credits
Accounts receivable-trade
90,700.98
ADJ. A/R TO ACTUAL
92,061.12
Ending Balance:
182,762.10
Income-professional fees
190,339.57
ADJ. A/R TO ACTUAL
92,061.12
REV M.D. INCOME COLL.
85,000.00
Ending Balance:
197,400.69
On November 30, 1984, the following entries were made:
Src Reference/Description
Debits
Credits
Accounts receivable-officers
178,000.00
REF. EXCESS ASSETS TRANS
85,000.00
Ending Balance:
93,000.00
Accounts payable - M.D.
85,000.00
REF. EXCESS ASSETS TRANS
85,000.00
Ending Balance:
00.00
After incorporation, gross receipts from the corporate medical practice were deposited into an account *265 styled "John F. Schultheiss, M.D. P.A." at First Victoria National Bank, Victoria, Texas. Mr. Hamilton continued to prepare monthly income statements for Dr. Schultheiss after the incorporation. Dr. and Mrs. Schultheiss' 1984 Federal income tax return lists Dr. Schultheiss' salary as $ 190,500, the amount which, from the association records, appears to be Dr. Schultheiss' salary from the association. In the notice of deficiency to Dr. and Mrs. Schultheiss, respondent determined that they had received the amount of $ 85,000 of income from accounts receivable from the sole proprietorship that was not included in their 1984 income. By an amendment to answer, respondent alleges in the alternative that the $ 85,000 of income from accounts receivable was omitted from the association's income for its fiscal year ending March 31, 1985. OPINION The $ 85,000 of accounts receivable respondent contends was not included in the 1984 income of Dr. and Mrs. Schultheiss represents the amount of accounts receivable of the sole proprietorship that was not transferred under the Bill of Sale and Agreement to the association. If the $ 85,000 of accounts receivable was not transferred to the association, *266 when the receivables were collected on behalf of Dr. Schultheiss, the amounts collected would be income to the Schultheisses. Respondent argues that the $ 85,000 of accounts receivable was not transferred to the association upon its incorporation and, therefore, must be included in the Schultheisses' individual income. The testimony of Mr. Hamilton makes it clear that all of the accounts receivable had not been transferred to the association at the time of incorporation. He testified that it was the practice of the accountant working with him on the incorporation not to transfer all of the accounts receivable of a sole proprietorship to a newly formed corporation. While he did not understand the reasoning behind this practice, he was sure that $ 85,000 of accounts receivable had not been transferred. Dr. Schultheiss testified that it was his intention that all of the assets of his sole proprietorship be transferred to the association. He also testified that he did not review the papers that Mr. Hamilton asked him to sign with respect to the incorporation. Without having reviewed the papers, it would be difficult for Dr. Schultheiss to know whether or not what he intended to *267 have transferred had actually been transferred. There is nothing in the record to indicate that, upon incorporation, the $ 85,000 of accounts receivable had been transferred to the association. Rather, the association records indicate that only $ 90,700.98 of accounts receivable was transferred. While the balance of accounts receivable of the sole proprietorship on March 31, 1984, was $ 175,700.98, the Bill of Sale and Agreement indicates a transfer of only $ 90,700.98 of accounts receivable to the association. Furthermore, according to the association's ledger, the opening balance of the association's accounts receivable on April 1, 1984, was $ 90,700.98. Accordingly we find that the $ 85,000 of accounts receivable had not been transferred to the association upon its incorporation. Even though the $ 85,000 of accounts receivable was not transferred to the association, the $ 85,000 was collected by the association and included in the amounts shown on its ledger. Mr. Hamilton testified that when he left Roloff Hnatek he took Dr. Schultheiss' account with him. Because he did not understand why all of the accounts receivable had not been transferred to the association and because *268 of the difficulty in keeping track of the accounts transferred and accounts not transferred, he adjusted the ledger to show that all of the accounts receivable had been transferred to the association. Accordingly, on July 31, 1984, he made the following entries in the general ledger: Src Reference/Description
Debits
Credits
Accounts receivable - trade
90,700.98
ADJ. A/R TO ACTUAL
92,061.12
Ending Balance:
182,762.10
Income - professional fees
190,339.57
ADJ. A/R TO ACTUAL
92,061.12
Ending Balance:
182,762.10
Income-professional fees
190,339.57
ADJ. A/R TO ACTUAL
92,061.12
REV M.D. INCOME COLL.
85,000.00
Ending Balance:
197,400.69
The result of the entries was to treat the $ 85,000 of accounts receivable as if it had been transferred to the association. However, on November 30, 1984, Mr. Hamilton apparently decided that the $ 85,000 of accounts receivable should not have been included in the association's records since he made entries on the books of the association on that date reducing accounts receivable by $ 85,000 and created an $ 85,000 accounts payable in favor of Dr. Schultheiss. The ledger reflected the following entries *269 on November 30, 1984: Src Reference/Description
Debits
Credits
Accounts receivable - officers
178,000.00
REF. EXCESS ASSETS TRANS
85,000.00
Ending Balance:
93,000.00
Accounts payable - M.D.
85,000.00
REF. EXCESS ASSETS TRANS
85,000.00
Ending Balance:
00.00
The result of the entries is to treat the $ 85,000 as not included in the association's income and to transfer this amount out of the association and to Dr. Schultheiss in the form of an accounts payable. The "accounts receivable - officers" on the association's books, which reflected Dr. Schultheiss' draw account, was then credited with the $ 85,000 accounts payable, reducing by $ 85,000 the amount Dr. Schultheiss owed to the association from his draws. Based on the July 31 and November 30, 1984, entries, the $ 85,000 of accounts receivable was not included in the income of the association for its fiscal year ending March 31, 1985, but was used for the benefit of Dr. Schultheiss. The Schultheisses argue that it was Dr. Schultheiss' intent that all of the accounts receivable of the sole proprietorship be transferred to the association upon incorporation and that the association should include *270 the $ 85,000 in its income. Specifically, they argue that the "real facts" and not the "bookkeeping entries" should control the determination of taxable income. They state that the association's daily sheets clearly show a collection of amounts of all the accounts receivable, that the association's tax return clearly shows that bank deposits were includable in gross income, and that the bank deposits stem from collection entries in the day sheets. The Schultheisses presented no evidence to support these contentions. Contrary to their assertion, the daily sheets, bank deposits, and corporate tax returns do not show what amounts collected were included in the association's income. The Schultheisses have not traced the $ 85,000 of accounts receivable of the proprietorship and shown that this amount was included in the income of the association. In fact, the accountant for the association testified that the $ 85,000 had not been included in the association's income and the crediting of the amount on the corporate books to Dr. Schultheiss' account supports this testimony. Although arguing that the real facts should control, the Schultheisses have not demonstrated the fact that the *271 accounts receivable were transferred to the association or that the $ 85,000 was in fact included in its income. The Schultheisses have failed to show that any portion of the $ 85,000 accounts receivable not transferred to the association was not collected during the 1984 calendar year. Accordingly, petitioners are required to include the $ 85,000 in their income for 1984. The Schultheisses argue in the alternative that the November 30, 1984, accounts payable entry on the ledger reflected a loan to Dr. Schultheiss from the association and its subsequent repayment. We fail to understand how an accounts payable entry would reflect a loan from the association to Dr. Schultheiss as an accounts payable entry would reflect a liability of the association. Accordingly, we find that this argument has no merit. The Schultheisses argue only that the amount of accounts receivable of $ 85,000 was included in the income of the association and do not argue and have presented no evidence that any portion of the $ 85,000 was already included in their income. Accordingly, we find that the $ 85,000 was not included in the Schultheisses' income for 1984. An addition to tax is imposed by section *272 6653(a)(1) for negligence or intentional disregard of rules or regulations. The amount of this addition is 5 percent of the underpayment, if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an additional addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence includes any failure to reasonably attempt to comply with the Code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances. , affg. . Dr. and Mrs. Schultheiss argue that they should not be liable for the additions to tax because Dr. Schultheiss was not an experienced businessman and he relied completely on Mr. Hamilton to attend to the accounting and tax considerations of both the association and the Schultheisses personally. The Schultheisses bear the ultimate responsibility for the correctness of their income tax returns. That they supplied their records to Mr. Hamilton *273 to prepare their returns and relied on him is not sufficient to relieve them of that responsibility. See . Although Dr. Schultheiss received monthly income statements prepared by Mr. Hamilton showing gross receipts for the first 3 months of 1984 of $ 161,413.45 and Dr. Schultheiss made bank deposits amounting to $ 164,958.56 for this same time period, he did not compare these figures to the $61,822 of income reported on the 1984 return for this period. Had the Schultheisses properly reviewed their returns, they would have noticed that their income from the sole proprietorship was understated by $ 102,000. Upon incorporation of the association, Dr. Schultheiss did not make certain that all the accounts receivable of the sole proprietorship had been transferred to the association. Dr. Schultheiss did not even review the papers incorporating the association before he signed them. If he had reviewed the papers or inquired as to whether all of the accounts receivable had been transferred, he would have been made aware of the fact that $ 85,000 of accounts receivable had not been transferred to the association. *274 The omission of both the $ 102,000 and the $ 85,000 of income by the Schultheisses from their 1984 return and the resulting underpayment did not arise from a mistake of law or from substantive advice of Mr. Hamilton. Cf. , revg. . Based on this record we find that the Schultheisses have failed to show that they were not negligent as to the entire underpayment of tax for the year 1984. An addition to tax of 25 percent of the underpayment attributable to a substantial understatement is imposed by section 6661(a) for a substantial understatement of income tax. An understatement is defined as the tax required to be shown on the return less the tax shown on the return, reduced by any rebates. Sec. 6661(b)(2). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Section 6661(b)(2)(B) provides for a reduction of the amount of the understatement in cases where there is or was substantial authority for the treatment of the item by the taxpayer or where an item with respect *275 to which the relevant facts affecting the item's tax treatment are adequately disclosed on the return or in a statement attached to the return. The Schultheisses conceded that they failed to report $ 102,000 of income from the sole proprietorship on their 1984 Federal income tax return. We hold that they also failed to include an additional $ 85,000 on their 1984 Federal income tax return. The Schultheisses have not shown substantial authority for omission of the income or that the omission was disclosed on their return. Accordingly, we sustain the addition to tax under section 6661(a) for 1984. Since we have held the $ 85,000 of accounts receivable to be taxable to the Schultheisses in 1984, we do not reach respondent's alternative contention raised in her amendment to answer in the association case. Decisions will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
1. This amount was received prior to April 1, 1984, but deposited after April 1, 1984.↩